**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Lindquist & Vennum P.L.L.P.,

                      Plaintiff,         Civ. No. 05-597 (RHK/JSM)
                                                **MEMORANDUM OPINION**
                                                **AND ORDER**

v.

Tamie P. Speciale and
Dispute Resolution Management, Inc.,

                      Defendants.

Mark D. Larsen, Lindquist & Vennum P.L.L.P., Minneapolis, Minnesota, for Plaintiff.

Peter R. Ginsberg, Peter R. Ginsberg, P.C., New York, New York, and Phillip R. Krass, Krass Monroe, P.A., Minneapolis, Minnesota, for Defendants.

**Introduction**

Lindquist & Vennum, P.L.L.P. ("L&V") brought suit against Defendants Tamie Speciale and Dispute Resolution Management, Inc. ("DRM") (collectively "Defendants"), alleging claims of breach of contract and quantum meruit based on Defendants' refusal to pay attorneys' fees and costs. Defendants have moved to dismiss the claims brought against DRM on the ground that DRM is not bound by the fee agreement at issue. For the reasons set forth below, the Motion will be granted in part and denied in part.

**Background**

**A.     The Parties**

L&V is a law firm organized as a Minnesota limited liability partnership with its principal places of business in Minneapolis, Minnesota and Denver, Colorado. (Am. Compl. ¶ 1.) DRM, a Utah corporation and former consulting division of KPMG, assists business organizations in pursuing environmental clean-up expense reimbursements from general liability insurance carriers. (Uphoff Aff. ¶ 5.) At the time of the events giving rise to this action, Speciale and William Russell[1] were the sole shareholders of DRM. (Am. Compl. ¶¶ 2, 3, 8.)

**B.     L&V's Legal Representation of Defendants**

L&V represented Defendants in two separate but related matters. First, in May 2001, Speciale and Russell engaged L&V to represent their interests in unwinding an unsuccessful business deal between DRM and Commodore Applied Technologies ("Commodore"). (Am. Compl. ¶ 8.) The Commodore transaction began in August 2000, when Speciale and Russell sold 81% of their DRM stock to Commodore. (Id.) Subsequent to that sale, however, Commodore defaulted on its payment obligations. (Id.) L&V represented Defendants' interests in repossessing their 81% of DRM stock, and provided advice regarding the tax implications of that repossession. (Id.)

Russell and Speciale also retained L&V to represent them in connection with a legal malpractice claim against the law firm of Geenberg Traurig L.L.P. ("GT") and two of the

---

[1]Russell is not a party to this action. In November 2004, Russell assigned his interest in DRM and the GT litigation (see infra) to Speciale. (Am. Compl. ¶ 12.)

2

firm's partners (the "GT litigation"). (Am. Compl. ¶ 9.) GT provided legal representation to Defendants in the Commodore transaction, and Defendants believed that the GT lawyers were responsible for the failure thereof. (Id.)

Pursuant to L&V's representation of Russell, Speciale, and DRM in the two legal matters, L&V drafted two letter agreements—both dated June 19, 2001—one of which pertained to the Commodore transaction (the "Commodore fee agreement") and one to the GT litigation (the "contingency fee agreement"). (Uphoff Aff. Exs. 4, 5.) With respect to the Commodore transaction, the Commodore fee agreement set forth "the terms under which [L&V] will provide advice to [DRM] in connection with its relationship with Commodore." (Id. Ex. 5.) The agreement provided that L&V's "representation of DRM in connection with such advice will be <u>billed at our straight hourly rates</u>." (Id. Ex. 5 (emphasis added).) It further provided

> DRM acknowledges that Lindquist & Vennum is presently representing <u>William Russell and Tamie Speciale, the former shareholders of DRM, in an action against the law firm of Greenberg Traurig, LLP</u>. Pursuant to the applicable Rules of Professional Conduct, Lindquist & Vennum acknowledges by my signature below that the Firm does not currently believe that our representation of them will adversely affect the interests of DRM, based upon the facts as now known to us.

(Id. (emphasis added).) The Commodore fee agreement is signed by Russell, as DRM's Chief Executive Officer. (Id.) There is no dispute that all of the fees incurred by DRM under the Commodore fee agreement have been paid to L&V. (See, e.g., Speciale Reply Aff. ¶ 13.)

3

With respect to L&V's representation of Speciale and Russell in the GT litigation, the parties entered into the contingency fee agreement. (Uphoff Aff. Ex. 4.) The agreement provides in relevant part:

> This engagement letter sets forth the terms under which Lindquist & Vennum will represent your interest in connection with claims that you have against the law firm of Greenberg Traurig, LLP.

<u>Each of you</u> would be responsible under this agreement to pay our out-of-pocket costs within 30 days after those costs are invoiced to you and to pay as attorneys' fees 20% of any settlement of the matter . . .

> You acknowledge by your signature below that we have been retained to represent <u>both of you individually</u> in connection with this engagement. Pursuant to the applicable Rules of Professional Conduct, Lindquist & Vennum acknowledges by my signature below that the Firm does not currently believe our simultaneous representation of both of you will adversely affect either of you, based upon the facts as now known to us.

> After consulting with us, you also acknowledge by your signature below that you consent to our representation of <u>both of you</u> in connection with the litigation. <u>You also acknowledge that a third party, Dispute Resolution Management, Inc., may be joined as a plaintiff in this proposed litigation.</u> Each of you agrees by signing below that based on the information currently known to you that there are no conflicts that exist between you preventing this multiple representation.

(<u>Id.</u> (emphasis added).) The contingency fee agreement is signed by Speciale and Russell. (<u>Id.</u>)

In August 2002, L&V filed the GT litigation in Colorado state court on behalf of Defendants. (Am. Compl. ¶ 10.) The action was removed to the United States District Court for the District of Colorado, and thereafter transferred to the United States District Court for the Southern District of New York. (<u>Id.</u>) While L&V remained counsel of

record for Defendants through the end of the GT litigation (id. ¶ 11), the relationship between L&V and Defendants deteriorated for various and complex reasons throughout the course of the litigation.

The GT litigation ultimately settled without a trial, although L&V was not involved in negotiating the settlement. (Am. Compl. ¶ 13.) Defendants have refused to pay L&V's fees and expenses for its legal services in the GT litigation. (Id.) They have also refused to make the settlement agreement or its full terms available to L&V. (Id.) On February 3, 2005, a Notice of Attorney's Lien pursuant to New York Judiciary Code § 475 was served on Defendants. (Id. ¶ 15.) On March 21, 2005, this action followed.

## C.    L&V's Amended Complaint

The Amended Complaint sets forth four claims against Defendants, two of which—claims for breach of contract and quantum meruit—are at issue in the instant Motion.[2] (Am. Compl. ¶¶ 19-26.) The Amended Complaint alleges

> On June 19, 2001, Speciale, Russell, and DRM entered into written retainer agreements with L&V regarding a potential legal malpractice action by Defendants[3] against . . . [GT], for claims arising from their representation of DRM, Russell, and Speciale in connection with the acquisition of DRM by [Commodore] (the "Retainer Agreement"). . . . Among other things, the Retainer Agreement requires the payment of a contingency fee to L&V equal to twenty percent (20%) of the gross amount of any settlement reached prior to the commencement of trial plus expenses incurred by L&V in representing Defendants in that dispute.

---

[2]L&V also brings claims for declaratory relief regarding an attorney's lien over funds held in trust. (Am. Compl. ¶¶ 27-28.)

[3]The Amended Complaint provides that "[d]efendants Speciale and DRM are sometimes collectively referred to herein as 'Defendants.'" (Am. Compl. ¶ 4.)

5

(Id. ¶ 9 (footnote added).)

The breach of contract claim states that "[p]ursuant to its contingency fee contract with L&V, Defendants were required to pay to L&V 20% of any settlement reached prior to trial of the malpractice action and expenses incurred by L&V in representing Defendants." (Id. ¶ 20.) It further provides that Defendants have breached their "contractual obligation by failing to pay or to make arrangements to pay L&V pursuant to the terms of the contingency fee contract." (Id. ¶ 21.)

The quantum meruit claim alleges that "Defendants have received the benefit and value of legal services and the payment of expenses provided by L&V, and [are] obligated to pay for the reasonable and fair value of them." (Id. ¶ 24.) L&V further alleges that "Defendants have not made payment for the full value of services received from L&V." (Id. ¶ 25.)

**Standard of Decision**

"Dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and destined to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, Mo., 244 F.3d 623, 627 (8th Cir. 2001). A cause of action "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 740 (8th Cir. 2002) (internal citations omitted) (citing Kohl v. Casson, 5 F.3d 1141, 1148 (8th Cir. 1993)). In analyzing the adequacy of a complaint's allegations under

6

Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those allegations. See Turner v. Holbrook, 278 F.3d 754, 757 (8th Cir. 2002).

**Analysis**

Defendants contend that L&V's breach of contract and quantum meruit claims against DRM must be dismissed.[4]  With respect to its breach of contract claim, Defendants claim that L&V did not enter into a fee agreement with DRM regarding the GT litigation, and that DRM is not bound by the agreement entered into by Speciale, Russell, and L&V. (Mem. in Supp. at 22-24; Speciale Reply Aff. ¶ 5.)  Regarding the quantum meruit claim, Defendants allege that L&V does not claim services were provided "on behalf of DRM or that DRM accepted those services with the expectation that it would compensate" L&V. (Mem. in Supp. at 24 (emphasis in original).)  The Court will consider each argument in turn.

**A.      Breach of Contract**

Defendants argue that the breach of contract claim against DRM must be dismissed because DRM did not sign the contingency fee agreement, the agreement was not addressed to DRM, and the agreement makes clear, through its use of various terms (such as, "each of

---

[4]Defendants originally filed their motion arguing that this Court lacked personal jurisdiction over Defendants (Mem. in Supp. at 9-18); venue was improper in this district (id. at 18-20); and, in the alternative, the Court should transfer the action to the Southern District of New York (id. 20-22).  Defendants have since abandoned those arguments, and now pursue only their motion to dismiss DRM.  (August 17, 2005 Letter to the Court from Phillip Krass.)

you" and "both of you"), that Speciale and Russell were the only parties to the agreement. (Id. at 23.) L&V responds that the contingency fee agreement constitutes an express contract with DRM because the agreement is signed by DRM's founders and shareholders. (Mem. in Opp'n at 35.) In the alternative, it contends that a contract between L&V and DRM may be implied in fact from the circumstances surrounding the execution of the contingency fee agreement and L&V's representation of DRM in the GT litigation. (Id. at 36-7.)

### 1. Express Contract

To state a claim for breach of contract, a plaintiff must allege 1) the existence of a contract; 2) its performance of the contract; 3) a breach by the defendant; and 4) resulting damages. See Parkhill v. Minn. Mut. Life Ins. Co., 174 F. Supp. 2d 951, 961 (D. Minn. 2000) (Minnesota law); see also Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994) (noting same elements required to state a claim for breach of contract under New York law).[5]  "A contract is to be interpreted to give effect to the mutual intention of the parties at the time of contracting, and in so doing the language used governs if it is clear it does not involve an absurdity."  Fox Sports Net North, LLC v. Minnesota Twins P'ship, 319 F.3d 329, 334 (8th Cir. 2003) (quotation omitted) (Minnesota law).

---

[5]The parties do not address the issue of which state's law applies to the instant Motion. L&V relies on Minnesota law, while Defendants rely mainly on New York law. Because neither party suggests that the choice of law issue would be determinative of the instant Motion, the Court will assume, for purposes of this Motion only, that Minnesota law applies.

The contingency fee agreement makes clear that it was entered into by Speciale and Russell as individuals, not as representatives of DRM.  Defendants correctly highlight the plain language of the agreement, which states, for instance, that L&V has "been retained to represent <u>both of you individually</u>," and that "<u>a third party, Dispute Resolution Management, Inc.</u>, may be joined as a plaintiff in [the] litigation."  (Uphoff Aff. Ex. 4 (emphasis added).)  Furthermore, at oral argument, L&V acknowledged that DRM is not a signatory to the contingency fee agreement, and there was no written retainer agreement signed by DRM in connection with the GT litigation.  (October 11, 2005 Hrg. Tape.)  At oral argument, L&V's counsel made clear that, "there are a number of retainer agreements, and . . . the separate written retainer agreement with Dispute Resolution Management was with respect to a different case than the one that . . . brings us here on this fee dispute matter."  (<u>Id.</u>)  Counsel further stated, "[t]o be clear, there is no written retainer agreement signed by Dispute Resolution Management."  (<u>Id.</u>)  The Court determines that Speciale and Russell—<u>not</u> DRM—are parties to the agreement.

This conclusion is bolstered by the fact that L&V executed the Commodore fee agreement with Russell <u>as a representative of DRM</u> on the same day that the contingency fee agreement was executed.  (<u>Id.</u> Ex. 5 (emphasis added).)  The Commodore fee agreement sets forth the terms of L&V's representation of DRM "in connection with its relationship with Commodore."  (<u>Id.</u>)  The agreement further states that "DRM acknowledges that [L&V] is presently representing <u>William Russell and Tamie Speciale</u>, the former shareholders of DRM, in an action against [GT]."  (<u>Id.</u> (emphasis added).)  If there were any doubt with

9

respect to whether the contingency fee agreement, read alone, was entered into by DRM, the Court determines that the two agreements read together leaves room for none. Accordingly, the Court rejects L&V's argument that "the [contingency fee] agreement, signed by DRM's founders and shareholders, is sufficient to comprise an express contract" between L&V and DRM.  (Mem. in Opp'n at 35.)

### 2. Implied Contract

In the alternative, L&V argues that there was a contract implied in fact between it and DRM, binding DRM to the terms of the contingency fee agreement.  (Mem. in Opp'n at 35-38.)  L&V correctly argues that implied in fact contracts are recognized under Minnesota law.  See, e.g., Roberge v. Cambridge Coop. Creamery, 79 N.W.2d 142, 145 (Minn. 1956); Upsher-Smith Laboratories, Inc. v. Mylan Laboratories, Inc., 944 F. Supp. 1411, 1434 (D. Minn. 1996).  However, Minnesota law also provides that an implied contract theory must be alleged in the complaint in order for a plaintiff to recover thereunder.  See Folk v. Home Mut. Ins. Co., 336 N.W.2d 265, 267 (Minn. 1983) (reversing trial court's determination that the plaintiff could prevail under an implied contract where there was "no language in the complaint suggesting an implied contract theory").

In the instant case, the Amended Complaint does not state a claim under an implied contract theory.  The Amended Complaint states that "Speciale, Russell, and DRM <u>entered into written retainer agreements</u> with L&V regarding a potential malpractice action by Defendants against [GT]."  (Am. Compl. ¶ 9 (emphasis added).)  As discussed above, while

10

DRM entered into a retainer agreement with L&V (the Commodore fee agreement), DRM did not sign a contingency fee agreement and the Commodore fee agreement did not pertain to "a potential malpractice action by [DRM] against [GT]." (Id.) Again, L&V conceded this point at oral argument. (See supra pp.9-10 (citing October 11, 2005 Hrg. Tape).)

Furthermore, the language of the Amended Complaint makes clear that L&V's breach of contract claim is premised only on the contingency fee agreement; L&V alleges that "[p]ursuant to its contingency fee contract with L&V, Defendants were required to pay to L&V 20% of any settlement reached . . . ." (Id. ¶ 20 (emphasis added).) There is no room to read into the Amended Complaint an implied contract theory pertaining to DRM. Accordingly, while the Court comes to no conclusion regarding whether L&V would ultimately be able to show that DRM acquiesced in some manner to the contingency fee agreement so as to form an implied contract, the Amended Complaint fails to state such a claim, and therefore the breach of contract claim against DRM must be dismissed.

**B.     Quantum Meruit**

Defendants' only argument regarding why L&V's quantum meruit claim against DRM must be dismissed is that "the Amended Complaint fails to allege that [L&V] performed services on behalf of DRM or that DRM accepted those services with the expectation that it would compensate Plaintiff." (Mem. in Supp. at 24 (emphasis in original).) The Court disagrees.

11

The basis of recovery in quantum meruit is that "the defendant has received a benefit from plaintiff which it is unjust for [the defendant] to retain without paying for it." Ylijarvi v. Brockphaler, 7 N.W.2d 314, 319 (Minn. 1942). Here, the Amended Complaint clearly alleges that DRM (along with Speciale) "received the benefit and value of legal services and the payment of expenses provided by L&V," and Defendants "have not made payment for the full value of services received from L&V, nor have Defendants reimbursed the expenses incurred by L&V" on their behalf. (Am. Compl. ¶¶ 24, 25.) The Amended Complaint clearly alleges that L&V represented DRM in the GT litigation and that DRM did not compensate L&V for its services. Accordingly, the Court determines that L&V has stated a claim for quantum meruit against DRM, and Defendants' motion to dismiss that claim will be denied.

**Conclusion**

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. No. 8) is:

1. **GRANTED** with respect to the Amended Complaint's (Doc. No. 3) Second Claim for Relief - Breach of Contract, and that claim is **DISMISSED WITH PREJUDICE** at to defendant Dispute Resolution Management, Inc.; and

2. **DENIED** with respect to the Amended Complaint's Third Claim for Relief - Quantum Meruit.

Dated: November  7 , 2005                                s/Richard H. Kyle

RICHARD H. KYLE
United States District Judge