UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| LINDQUIST & VENNUM, P.L.L.P.,<br><br>Plaintiff,<br><br>v.<br><br>TAMIE P. SPECIALE and DISPUTE RESOLUTION MANAGEMENT, INC.,<br><br>Defendants. | Court File No. 05-CV-597 PJS/JJG<br><br>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION IN LIMINE TO EXCLUDE PLAINTIFF FROM CALLING MARK LANTERMAN AS A WITNESS |

## INTRODUCTION

Defendants respectfully offer this memorandum of law in support of their motion in limine to exclude Lindquist & Vennum from calling Mark Lanterman as a witness at trial. Mark Lanterman ("Lanterman") is a computer forensic agent/representative Defendants retained during this litigation to assist and consult with electronic discovery issues. Lindquist & Vennum has identified Lanterman as a witness they intend to call at trial.

Because all communications Defendants and/or their counsel had with Lanterman and the work Lanterman performed on Defendants' behalf during this litigation is entitled to attorney-client and work-product protection, he may not be called as a witness to testify at trial.

## FACTS

Defendants incorporate by reference the salient facts of this case that are set forth in Defendants' trial brief previously filed with the Court.

## LEGAL ARGUMENT

### I. Judge Graham's April 19, 2007 Order.

Lindquist's improper attempts to subpoena and depose Lanterman during the discovery phase of this litigation were previously addressed by Judge Graham in her April 19, 2007 Order. Specifically, Judge Graham concluded that:

> This level of intrusion into defendants' forensic computer consulting relationship is unnecessary. An affidavit from Mr. Lanterman dealing with the methods and procedures he employed or advised others to employ in searching the defendants' computers is sufficient to meet the Court's intended purpose of requiring defendants to inform plaintiffs of how they searched for and gathered their electronic documents for production of this case.

(Doc. No. 165, p. 5).

Judge Graham rejected Lindquist's misplaced theory of spoliation and determined that Lanterman's testimony had no more relevant or probative value beyond those matters contained in the affidavit he later submitted to the Court. Thus, Lindquist should not be permitted to call Lanterman as a witness at trial.

### II. BECAUSE MARK LANTERMAN IS AN AGENT/REPRESENTATIVE RETAINED BY DEFENDANTS AND THEIR COUNSEL, ATTORNEY-CLIENT PRIVILEGE AND WORK-PRODUCT IMMUNITY PREVENT HIS TESTIMONY AT TRIAL.

#### A. Attorney-Client Privilege.

The Eighth Circuit Court of Appeals has determined that it must apply Minnesota

law regarding privileges in diversity actions. <u>Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.</u>, 819 F.2d 1471, 1477 (8th Cir. 1987) ("Since this is a diversity action, we must follow Minnesota law on the law of privileges."); <u>see</u> also <u>Blackledge v. Martin K. Eby Constr. Co.</u>, 542 F.2d 474, 476 n.1 (8th Cir. 1976) ("Privileges created by state law are, of course, applicable in a diversity action."). Thus, because the present case is a diversity action in federal court and is governed by Minnesota state law, Minnesota's attorney-client privilege law applies.

Under Minnesota law, "[a]n attorney cannot, without the consent of the attorney's client, be examined as to any communications made by the client to the attorney or the attorney's advice given thereon in the course of professional duty; nor can any employee of the attorney be examined as to the communication or advice, without the client's consent." Minn. Stat. § 595.02, subd. 1(b); <u>see</u> also <u>Lumber v. PPG Indus., Inc.</u>, 168 F.R.D. 641, (D.Minn. 1996) (citing section 595.02(1)(b) as foundation for Minnesota's attorney-client privilege).

While the statute only references an "employee of the attorney," it has been interpreted broadly to third parties who are "necessary for the transmission of information or rendition of legal services." 11 <u>Minnesota Practice</u> § 501.04 (3d ed.); <u>Brown v. St. Paul City Ry. Co.</u>, 241 Minn. 15, 33, 62 N.W.2d 688, 700 (1942) (noting that right to refuse to divulge privileged communication extends beyond attorneys and includes agents). Third-party agents and representatives encompassed in the attorney-client privilege include interpreters, accountants, or experts retained solely for the purpose of

3

assisting the attorney in communicating with the client, evaluating the client's position, or where the expert is required for accomplishing a necessary task. Id.; Brown, 241 Minn. at 34, 62 N.W.2d at 700 (defining confidential communication under attorney-client privilege as including information to third persons "reasonably necessary for the transmission of the information or the accomplishment of the purpose for which it is transmitted").

For example, in State v. Schneider, the Minnesota Supreme Court concluded that a psychiatrist who served as an independent expert was not an employee of defense counsel for purposes of the attorney-client privilege, but noted that if the psychiatrist "had examined defendant solely for the stated purpose of advising defense counsel and not with the thought of testifying at trial it would be clear that the privilege was not waived." 402 N.W.2d 779, 787 (Minn. 1987). This more expansive view of the attorney-client privilege is consistent with the Eighth Circuit Court of Appeals, which has opined that communications between consultants or independent contractors and attorneys fall within the attorney-client privilege. In re Bieter Co., 16 F.3d 929, 936 (8th Cir. 1994).

Here, Lanterman and his company, Computer Forensic, were hired as an agent/representative for the purpose of assisting counsel with electronic discovery matters. There was never any intention that Lanterman would serve as an expert regarding any substantive issues involved in this case nor was it ever contemplated he

would be a witness at trial.[1] Similar to an interpreter or accountant, a computer consultant or computer specialist is necessary for facilitating the rendition of legal services related to e-discovery given the highly technical nature of computer technology. All communications including Lanterman/Computer Forensic, Defendants, and/or their counsel were wholly related to accomplishing e-discovery tasks and, thus, were reasonably expected to be confidential and free from invasion or intrusion by opposing counsel. Calvin Klein Trademark Trust v. Wachner, 124 F.Supp.2d 207 (S.D.N.Y. 2000) (joint discussions among client, its attorney, and its investment banker were privileged where investment banker's role involved providing advice useful to the attorney in rendering legal opinion); Geer v. Gilman Corporation, 2007 WL 1423752, * 2 (D.Conn. 2007) ("an agent, such as a financial advisor, may have communications with an attorney that are covered by the attorney-client privilege if the financial advisor's role is limited to helping a lawyer give effective advice by explaining financial concepts to the lawyer").

Consequently, the attorney-client privilege extends to such communications and Defendants' motion in limine should be granted. See e.g. U.S. v. Horvath, 731 F.2d 557, 561 (8th Cir. 1984) (noting that attorney-client privilege extends to confidential communication "made for the purpose of facilitating the rendition of legal services to the client"); U.S. v. Schwimmer, 892 F.2d 237, 243 (2nd Cir. 1989) (holding that attorney-client privilege extends to certain agents of an attorney, including accountants hired to

---

[1] Lanterman and Computer Forensic imaged Speciale's computer to recover any possible evidence or documents responsive to Plaintiff's document request. Judge Graham specifically declined to require Defendants to use a forensic expert. Defendants incurred more than $20,000 in doing so to ensure compliance with the Court's order.

assist in the rendition of legal services).

### B. Work-Product Immunity.

Additionally, all communications between Lanterman, Computer Forensic, Defendants, and/or counsel are protected under the work-product doctrine. The Eighth Circuit applies federal law to work product claims. Pepsico, Inc. v. Baird, Kurtz & Dobson, LLP, 305 F.3d 813, 817 (8th Cir. 2002). The United States Supreme Court first recognized the principle that work-product materials enjoy a qualified protection from discovery in Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385 (1947). The Court based its decision on the recognition that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Id. at 510, 67 S. Ct. at 385. The work-product doctrine has since been codified in Rule 26(b)(3), which states:

> [A] party may obtain discovery of documents and tangible things…prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.[2]

---

[2] It is not the materials or documents Lanterman found on Speciale's computer that Lindquist seeks by calling Lanterman as a witness at trial. Those documents have already been produced. Having failed to convince Judge Graham that any spoliation occurred, Lindquist now wishes to suggest spoliation to the jury by questioning Lanterman on an inquiry which has already been put to rest.

Fed. R. Civ. P. 26(b)(3).

As the language of the Rule makes clear, so long as the information was prepared in anticipation of litigation, the privilege which attaches to ordinary work product is only defeated by an appropriate showing, on the part of the discovering party, of "substantial need" and "undue hardship." Lumber, 168 F.R.D. at 644 (quotations omitted). Unlike ordinary work product, opinion work product, which includes an attorney's mental impressions, thought processes, opinions, conclusions, and legal theories, "enjoys a very nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." Id. (quotations omitted).

As codified, and as subsequent caselaw makes clear, the work-product doctrine extends beyond the attorney's work product and also includes the work product of the attorney's agents and representatives. Fed. R. Civ. P. 26(b)(3) (citing non-exhaustive list of representatives to whom work-product protection is extended, including but not limited to, "consultant, surety, indemnitor, insurer, or agent); see United States v. Nobles, 422 U.S. 225, 238-239, 95 S. Ct. 2160 (1975) ("[T]he doctrine protects material prepared by agents for the attorney as well as those prepared by the attorney himself.").

Thus, questions that would solicit protected work-product information if asked directly of a party's attorney seek protected work-product information when asked of the attorney's agents. See Alexander v. F.B.I., 192 F.R.D. 12, 18 (D.D.C. 2000) ("The caselaw dealing with attorneys' investigators shows that they should generally be afforded the same protection as the attorneys for whom they work."); Taylor v. Temple &

Cutler, 192 F.R.D. 552, 556 (E.D.Mich. 1999) ("Where an attorney must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial, the privilege most assuredly lies.") (quotations omitted); Sanchez v. Matta, 229 F.R.D. 649 (D.N.M. 2004) (same).

Similarly, Lanterman and Computer Forensic were retained as an agent/representative to consult regarding e-discovery and other computer forensics matters in preparation for trial, with no intention of serving as an expert in any other capacity.[3] As such, he is clearly an agent/representative of counsel and not an independent expert subject to subpoena or being called as a trial witness.

---

[3] If the firm of Krass Monroe had an employee with Lanterman's skills on staff, it would have used that actual employee. For purposes of this issue, Lanterman should be viewed in the same light.

## CONCLUSION

For the foregoing reasons, Defendants' motion in limine should be granted in its entirety.

Dated: September 21, 2007                **KRASS MONROE, P.A.**

s/Phillip R. Krass
Phillip R. Krass (ID# 58051)
John Harper III (ID# 41397)
C. John Jossart (ID # 295048)
Attorneys for Defendants
8000 Norman Center Drive, Suite 1000
Minneapolis, MN  55437
Telephone:  (952) 885-5999
Fax:  (952) 885-5969
Email: rkrass@krassmonroe.com

G:\WPDATA\S\SPECIALE.T 12228\001\PLD\MOTION IN LIMINE - MARK LANTERMAN.DOC